# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kamil Brown,                              :
                       Petitioner     :
                                     :
           v.                              :    No. 767 C.D. 2019
                                     :    Submitted: November 22, 2019
Pennsylvania Board                        :
of Probation and Parole,                  :
                       Respondent     :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                    FILED:  September 29, 2020

Petitioner Kamil Brown (Brown) petitions for review of a final determination of the Pennsylvania Board of Probation and Parole[1] (Board), mailed May 22, 2019. The Board affirmed its prior decision, recorded on April 19, 2019 (mailed April 23, 2019), thereby denying Brown's request for administrative relief, in which he sought to challenge the Board's recalculation of his maximum sentence date. Brown's counsel, David Crowley, Esquire (Counsel), filed an application to

---

[1] Subsequent to the filing of the petition for review, the Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code (Code), *as amended*, 61 Pa. C.S. §§ 6101, 6111(a).

withdraw as counsel. Counsel asserted, as expressed in his no-merit letter,[2] that the issues Brown raises in his petition for review are without merit. For the reasons set forth below, we grant Counsel's application to withdraw and affirm the final determination of the Board.

By action recorded on March 8, 2016, the Board granted Brown parole. (Certified Record (C.R.) at 4.) Brown was officially released from confinement at a State Correctional Institution (SCI) on July 5, 2016. (*Id.* at 83.) At the time of his parole, Brown had a maximum sentence date of December 23, 2020. (*Id.*)

On December 10, 2017, the Philadelphia Police Department arrested Brown on various charges relating to possession of a firearm. (*Id.* at 79-80.) The next day, the Board issued a warrant to commit and detain Brown. (*Id.* at 82.) Brown did not post bail. (*Id.* at 79.) Brown waived his right to a detention hearing and counsel. (*Id.* at 24.) By Board action recorded on January 26, 2018, the Board detained Brown pending resolution of his criminal charges. (*Id.* at 29.) On December 11, 2018, the Court of Common Pleas of Philadelphia County (common pleas) convicted Brown of felony possession of a firearm. (*Id.* at 63.)

---

[2] In *Anders v. California*, 386 U.S. 738 (1967), the Supreme Court of the United States held that in order for a criminal defendant's counsel to withdraw from representing his client in an appeal, counsel must assert that the case is completely frivolous, as compared to presenting an absence of merit. *Anders*, 386 U.S. at 744. An appeal is completely or "wholly" frivolous when there are no factual or legal justifications that support the appeal. *Craig v. Pa. Bd. of Prob. & Parole*, 502 A.2d 758, 761 (Pa. Cmwlth. 1985). In seeking to withdraw, counsel must submit a petition to withdraw and a brief "referring to anything in the record that might arguably support the appeal." *Cmwlth. v. Baker*, 239 A.2d 201, 202 (Pa. 1968) (quoting *Anders*, 386 U.S. at 744). The Pennsylvania Supreme Court, however, has held that in matters that are *collateral* to an underlying criminal proceeding, such as parole matters, counsel seeking to withdraw from representation of a client may file a "no-merit" letter that includes information describing the extent and nature of the counsel's review, listing the issues the client wants to raise, and informing the court of the reasons why counsel believes the issues have no merit. *Cmwlth. v. Turner*, 544 A.2d 927, 928-29 (Pa. 1988).

On March 11, 2019, common pleas sentenced Brown to a term of imprisonment of two to four years. (*Id.* at 77.)

On April 1, 2019, Brown, represented by counsel, participated in a revocation hearing before a hearing examiner, during which he acknowledged his new conviction. (*Id.* at 37, 45.) That same day, the hearing examiner prepared a hearing report, which she and a Board member signed on April 2, 2019, and April 3, 2019, respectively. (*Id.* at 30-36.) Thereafter, by action recorded on April 19, 2019 (mailed on April 23, 2019), the Board recommitted Brown as a convicted parole violator for a period of 24 months' backtime. (*Id.* at 88.) The Board recalculated Brown's maximum sentence date as September 21, 2023, and calculated Brown's parole eligibility date as April 3, 2021. (*Id.*)

On April 30, 2019, Brown submitted a *pro se* administrative remedies form to the Board. (*Id.* at 90.) On May 10, 2019, Brown's counsel submitted the same form on his behalf. (*Id.* at 95-96.) Brown essentially argued that the Board erred by denying him credit for the entirety of his time spent at liberty on parole because he did not commit a crime of violence. (*Id.* at 90, 94.) Brown also argued that the Board erred in imposing a recalculated maximum sentence date that will cause him to serve more time than the sentence imposed by common pleas, in contravention of Pennsylvania statutory and constitutional law. (*Id.* at 94.) Finally, Brown argued that the Board erred in calculating his reparole eligibility date. (*Id.*)

In response, the Board issued a final determination, mailed May 22, 2019, denying Brown's challenge. (*Id.* at 98-99.) In so doing, the Board reasoned:

> The Board denied [Brown] credit for time at liberty on parole in this instance . . . .
>
> The Board properly recalculated . . . Brown's max date. The Board paroled him from [an SCI] on July 5, 2016, with a max[imum] date of December 23,

3

2020. This left him with 1632 days remaining on his sentence . . . .

> On December 11, 2017, the Board lodged its detainer . . . . [Brown] did not post bail. [Common pleas] sentenced him to a state term of imprisonment on March 11, 2019.

> The . . . Code[, 61 Pa. C.S. §§ 101-7123,] provides that convicted parole violators who are paroled from a[n SCI] and then receive another sentence to be served in a[n SCI] must serve the original sentence first. However, that provision does not take effect until the parolee is recommitted as a convicted parole violator. Thus, . . . Brown did not become available to commence service of his original sentence until April 3, 2019, when the Board made [its] decision. Adding 1632 days to that date yields a new maximum sentence date of September 21, 2023.

> . . . Brown is eligible to apply for parole on April 19, 2020. The eligibility for reparole date of April 3, 2021[,] that is listed on the [B]oard action reflects the end of the 24[-]month recommitment period. The Board will schedule an interview three months before April 3, 2021[,] without an application for parole.

(*Id.* (citation omitted).)

Brown then filed the instant petition for review on June 21, 2019, arguing that the Board failed to credit his original sentence with all the time to which he is entitled. Before evaluating the merits of Brown's challenge, we will first address Counsel's application to withdraw from his representation of Brown. When no constitutional right to counsel is involved in a parole case, an attorney seeking to withdraw from representing a prisoner may file a no-merit letter, as compared to an *Anders* brief. *Turner*, 544 A.2d at 928-29. In *Hughes v. Pennsylvania Board of Probation and Parole*, 977 A.2d 19 (Pa. Cmwlth. 2009) (en banc), this Court held that a constitutional right to counsel in a parole matter arises only when the prisoner's case includes:

4

> [a] colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Hughes*, 977 A.2d at 25-26 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). The record in this matter contains no suggestion by Brown that he did not commit the crimes for which he received a new criminal conviction, nor does Brown suggest any reasons to justify or mitigate the parole violation[3]—*i.e.*, his new criminal conviction. Thus, Brown has only a statutory right to counsel under Section 6(a)(10) of the Public Defender Act.[4]

In order to satisfy the procedural requirements associated with no-merit letters, counsel must: (1) notify the parolee that he has submitted to the Court a request to withdraw; (2) provide the parolee with a copy of counsel's no-merit letter; and (3) advise the parolee that he has the right to obtain new counsel and to submit to the Court a brief of his own, raising any arguments that he may believe are

---

[3] Counsel states in his no-merit letter that Brown "offered mitigation at the dispositional portion of the [revocation] hearing" before the Board. (Counsel's no-merit letter at 3.) A review of the hearing transcript reveals, however, that Brown simply discussed some difficulties he had faced (including injuries and loss of family members) and his participation in parole-related programs for the Board to consider in assessing his "street time." (C.R. at 49.) Brown simultaneously explained that he "take[s] full responsibility for whatever took place during . . . [his December 10, 2017] arrest," and that he is "not shying away from" his conviction. (*Id.* at 51.) Thus, although Counsel may characterize Brown's testimony as "mitigation" for purposes of the Board's decision to grant or deny credit, Brown did not offer mitigation or justification for— indeed, he expressly took full responsibility for—the *violation* that led to the revocation of his parole.

[4] Act of December 2, 1968, P.L. 1144, *as amended*, 16 P.S. § 9960.6(a)(10).

5

meritorious.[5]   *Reavis v. Pa. Bd. of Prob. & Parole*, 909 A.2d 28, 33 (Pa. Cmwlth. 2006).  In seeking to withdraw, this Court has consistently required an attorney to include the following descriptive information in a no-merit letter:  (1) the nature and extent of counsel's review of the case; (2) the issues the parolee wants to raise; and (3) the analysis counsel used in reaching his conclusion that the issues are meritless. *Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. Cmwlth. 2009).  Consequently, before conducting an independent review of the merits of the appeal to determine whether Brown's appeal has no merit, we must first evaluate Counsel's no-merit letter to determine whether it complies with the requirements for withdrawal applications.

In his petition for review, Brown argues that the Board failed to credit his original sentence with all the time to which he is entitled.  Additionally, before the Board, Brown argued that the Board lacks jurisdiction and/or authority to recalculate his judicially imposed sentence—an argument Counsel addressed in his no-merit letter.  Counsel's no-merit letter contains an adequate summary of Brown's parole and conviction history.  Further, Counsel has discussed the issues and provided a satisfactory legal analysis.[6]   Counsel's no-merit letter, therefore, meets the

---

[5] Counsel served Brown with his application to withdraw and no-merit letter.  Counsel advised Brown of his right to retain counsel and to file a brief on his own behalf.  Thus, Counsel has complied with these requirements.

[6] In considering Brown's potential arguments on appeal, Counsel addressed whether the Board:  (1) has jurisdiction and/or authority to recalculate Brown's maximum sentence; (2) abused its discretion in denying him credit for time at liberty on parole; (3) erred in recalculating his maximum sentence date; or (4) erroneously calculated Brown's reparole eligibility date as April 3, 2021.  Regarding the fourth issue, Counsel correctly noted that Brown may reapply for parole one year after the Board's most recent decision with respect to his parole (*i.e.*, on April 19, 2020), and that the Board must act on such an application and may not restrict his statutory right to apply for parole. *See McGinley v. Pa. Bd. of Prob. & Parole*, 90 A.3d 83, 92 (Pa. Cmwlth. 2014).  Counsel then observed that the Board conceded this point in its decision, stating

requirements under *Zerby*, and we may proceed to determine whether Counsel is correct that Brown's petition for review has no merit.

Our courts have routinely upheld the Board's authority to recalculate a parole violator's maximum sentence date. As the Pennsylvania Supreme Court wrote, "the Parole Board's power to deny credit for 'street time' . . . is not an encroachment upon the judicial sentencing power." *Young v. Pa. Bd. of Prob. & Parole*, 409 A.2d 843, 848 (Pa. 1979). This maxim was reiterated in *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568 (Pa. 1980), where our Supreme Court opined: "[W]hen the Board refuses to credit a convicted parole violator with time spent free on parole there is neither a usurpation of the judicial function of sentencing nor a denial of the procedural safeguards to which persons are entitled." *Gaito*, 412 A.2d at 570. Further, this Court, in *Davidson v. Pennsylvania Board of Probation and Parole*, 33 A.3d 682 (Pa. Cmwlth. 2011), determined that "the Board did not violate the separation of powers doctrine by acting pursuant to [Section 6138 of the Code,] 61 Pa. C.S. § 6138[,] and recommitting [the p]etitioner as a convicted parole violator without credit for time served at liberty on parole." *Davidson*, 33 A.3d at 686. It follows, therefore, that the Board acted within its jurisdiction and authority when it recalculated Brown's maximum sentence date.

When deciding not to award credit for time served at liberty on parole, the Board must "provide a contemporaneous statement explaining its reason for denying a [convicted parole violator] credit for time spent at liberty on parole." *Pittman v. Pa. Bd. of Prob. & Parole*, 159 A.3d 466, 475 (Pa. 2017). Accordingly, so long as the Board provides a reason for denying credit for street time, it has sufficiently

that Brown could reapply for parole beginning April 19, 2020, but clarifying that the Board would automatically schedule a parole interview, even without an application, at the end of his two-year backtime (*i.e.*, on April 3, 2021).

7

exercised its discretionary power. In this case, the Board explained its reason for denying Brown credit for his street time by noting on the hearing report that it would deny credit and indicating that it did so due to the fact that Brown was arrested for a firearms charge. (C.R. at 32.) The Board, therefore, has exercised its discretionary powers pursuant to Section 6138(a) of the Code and satisfied our Supreme Court's decision in *Pittman* when it provided a contemporaneous written explanation for the denial. We also note that, contrary to what Brown appears to suggest, Section 6138(a)(2.1)(i) of the Code does not *require* the Board to award credit in the absence of a crime of violence. Rather, that section preserves the Board's discretion under Section 6138(a)(2.1) to award (or not award) credit, unless the crime committed on parole meets the criteria in subsection (i), in which case the Board is required to *deny* credit. Here, subsection (i) does not limit the Board's discretion because Brown's offense does not meet those criteria. For the foregoing reasons, the Board did not abuse its discretion in denying Brown credit for time at liberty on parole.

In addition to the discretionary credit for periods of time spent at liberty on parole discussed above, a parolee may be entitled to credit on the sentence from which he was paroled for time spent in confinement prior to sentencing on a subsequent criminal conviction. When the Board has lodged a detainer and the parolee has not posted bail on his new criminal charges, such that the parolee is being confined on both the Board's detainer and as a result of the pending criminal charge, presentence confinement credit must be applied to reduce the new sentence of incarceration unless the credit would exceed that new sentence of incarceration. *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d. 299, 307-09 (Pa. 2003). To the contrary, when a parolee has posted bail, such that he is detained solely on the

8

Board's warrant, the Board must apply the presentence confinement credit to reduce the unserved balance of the sentence from which the parolee was paroled. *Gaito*, 412 A.2d at 571.

Furthermore, whether time spent in confinement subsequent to sentencing is applied to the sentence from which a parolee was paroled or to the sentence for a new criminal conviction depends upon whether the Board has recommitted the parolee. Section 6138(a)(4) of the Code, 61 Pa. C.S. § 6138(a)(4), provides that "[t]he period of time for which the parole violator is required to serve shall be computed from and begin on the date that the parole violator is taken into custody to be returned to the institution *as a parole violator*." (Emphasis added.) The provisions of Section 6138(a)(4), therefore, become operative only once the Board has revoked parole. *See Barnes v. Pa. Bd. of Prob. & Parole*, 203 A.3d 382, 391-92 (Pa. Cmwlth. 2019). In *Barnes*, we explained:

> [I]t is well established that the requirement that a [convicted parole violator] serve the balance of his original sentence is only operative once parole has been revoked and the remainder of the original sentence becomes due and owing. Therefore, credit for time a [convicted parole violator] spends in custody between imposition of a new sentence and revocation of parole must be applied to the new sentence. Parole revocation occurs once a hearing examiner and Board member or two Board members sign a hearing report recommitting a prisoner as a [convicted parole violator].

*Id.* at 392 (citations omitted) (internal quotation marks omitted).

Here, Brown had 1632 days left on his sentence when he was released on parole. (C.R. at 69.) Brown was arrested on the new charges on December 10, 2017, and he never posted bail. (*Id.* at 79-80.) The Board issued its warrant to commit and detain Brown on December 11, 2017. (*Id.* at 82.) Brown remained incarcerated, therefore, on both the Board's warrant *and* the new criminal charges until common

9

pleas sentenced him for the new conviction on March 11, 2019. (*See id.* at 77.) Under *Martin* and *Gaito*, the presentence confinement time can be applied only to his new sentence because he was not detained *solely* on the Board's warrant during any period of time. At the time of his sentence, Brown had not yet been recommitted by the Board as either a technical or convicted parole violator, because the Board did not recommit Brown until April 3, 2019, when the Board member signed the hearing report. (*Id.* at 36.) Thus, following sentencing, Brown did not begin to serve time on his original sentence until April 3, 2019, and the time between sentencing and April 3, 2019, must be credited to his new sentence under *Barnes*. As such, adding the remaining 1632 days of his original sentence (with no credited days) to the start date of April 3, 2019, results in a new maximum sentence date of September 21, 2023. The Board, therefore, did not err in its recalculation of Brown's new maximum sentence date, and it did not deny Brown any credit to which he is entitled.

Based on the foregoing discussion, we agree with Counsel that Brown's petition for review lacks merit, and, therefore, we grant Counsel's application to withdraw as counsel. Moreover, because we have concluded that Brown's appeal lacks merit, we affirm the final determination of the Board, denying his administrative appeal.

_____
P. KEVIN BROBSON, Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Kamil Brown, : 
                Petitioner : 
                 : 
        v. :   No. 767 C.D. 2019
                 : 
Pennsylvania Board : 
of Probation and Parole, : 
                Respondent : 

# **O R D E R**

AND NOW, this 29th day of September, 2020, the application to withdraw as counsel filed by David Crowley, Esquire, is GRANTED, and the final determination of the Pennsylvania Board of Probation and Parole is AFFIRMED.

 

P. KEVIN BROBSON, Judge